UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STILLWELL READY MIX
& BUILDING MATERIALS LLC and
STILLWELL READY MIX LLC

              Plaintiffs,
- against -

LEHIGH CEMENT COMPANY LLC
A/K/A LEHIGH CEMENT

              Defendant.
------------------------------------------------------------x

Docket No: 21-CV-3767

COMPLAINT

Plaintiffs by their attorneys, ROSEN LAW LLC for its complaint in this action, alleges as follows:

## JURISDICTION AND VENUE

1. That the United States District Court for the Eastern District of New York has jurisdiction over the parties, pursuant to Title 28 of the United States Code §1332(a)(1) as the Plaintiffs and Defendant are citizens of different states and supplemental jurisdiction pursuant to Title 28 of the United States Code §1167, which provides the District Court with jurisdiction based on diversity of citizenship.

2. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3. The United States District Court for the Eastern District of New York has venue pursuant to Title 28 of the United States Code §1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated within in the Eastern District of New York.

4. Plaintiffs demand a jury trial.

5. Plaintiff Stillwell Ready Mix LLC is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business located at 2543 Stillwell Avenue, County of Kings, City and State of New York.

6. Plaintiff Stillwell Ready Mix & Building Materials LLC is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business located at 2543 Stillwell Avenue, County of Kings, City and State of New York.

7. All of the members of Plaintiffs are citizens and residents of the State of New York and reside within the Eastern District of New York.

8. Upon information and belief, Defendant Lehigh Cement Company LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 7660 Imperial Way, Allentown, Pennsylvania 18195. Lehigh is a wholly owned subsidiary of Lehigh Hanson, Inc., which has a principal business address at 300 E. John Carpenter Freeway, Suite 1645, Irving, Texas 75062.

9. Upon information and belief, none of the members of Defendant Lehigh Cement Company LLC are citizens of or residents of the State of New York.

10. Upon information and belief, Defendant Lehigh Hanson, Inc. is not a citizen of, or resident of the State of New York.

## AS AND FOR A FIRST CLAIM FOR RELIEF FOR BREACH OF CONTRACT AGAINST DEFENDANT

11. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "9" of this complaint, with the same force and effect as if more fully set forth at length herein.

12. Plaintiffs are concrete ready mix companies located in Brooklyn, New York that sells ready mix concrete to their customers.

13. Defendant is the seller of cement and other materials (hereafter referred to collectively as "Cement"), which is a product used to make ready mix concrete.

14. Since approximately 2004, Plaintiffs have purchased Cement from Defendant.

15. Since approximately 2004, Defendant delivered the Cement to Plaintiffs at Plaintiffs' manufacturing plant in Brooklyn, New York, within the Eastern District of New York.

16. Between approximately 2004 and 2020, Defendant was the primary supplier of Cement to Plaintiffs for Plaintiffs' use in manufacturing ready mix concrete.

17. There was the existence of a valid oral contract between the Plaintiffs and Defendant, wherein Defendant agreed to sell Cement to Plaintiffs, and Plaintiffs agreed to pay Defendant for the Cement that Plaintiffs purchased from Defendant.

18. Plaintiffs purchased Cement from Defendant on an approximately weekly basis for more than sixteen (16) years.

19. Between 2004 and the present time, Plaintiffs purchased in excess of $30,000,000 of Cement from Defendant and paid for same.

20. Plaintiffs paid Defendant by check for the purchases made by Plaintiffs from Defendant.

21. On numerous occasions, Defendant failed to credit Plaintiffs' account with the payments that Plaintiffs actually made to Defendant.

22. Plaintiffs advised Defendant numerous times over the course of approximately three (3) years that Defendant had failed to issue credits to Plaintiffs' account for the payments that Plaintiffs made to Defendant.

23. Defendant also failed to provide credits to Plaintiffs for 100% of the amounts paid on certain checks to Defendant from Plaintiffs.

24. Defendant had a pattern of confusing and incorrect bookkeeping which resulted in Plaintiffs making payments to Defendant for which Defendant failed to issue proper credits to Plaintiffs for the monies that Defendant actually received from Plaintiffs.

25. For a period of time, Defendant was the exclusive provider of Cement to Plaintiffs.

26. Without receiving Cement product from Defendant, Plaintiffs could not operate its concrete ready mix business.

27. Plaintiffs made payments to Defendant when Defendant demanded payments, because Defendant had, numerous times, threatened to "cut off" Plaintiffs from shipments of Cement product, which would have been devastating to Plaintiffs' business.

28. Without receiving Cement from Defendant, Plaintiffs could not operate its ready mix concrete business.

29. Upon information and belief, for numerous years, Plaintiffs could not purchase any Cement products from any third parties, because Defendant had allegedly told other

Cement suppliers that Plaintiffs did not pay its bills, thereby resulting in third-party cement suppliers refusing to supply cement to Plaintiffs.

30. Defendant demanded payments from Plaintiffs which Plaintiffs made to Defendant in order to keep the flow of Cement from Defendant to Plaintiffs.

31. It had come to Plaintiffs' attention that Defendant had failed to issue credits to Plaintiffs' long running account, resulting in overpayments of monies over the past six (6) years from Plaintiffs to Defendant, in a sum to be determined at trial, but anticipated to be no less than $3,000,000 in overpayments that Defendant owes to Plaintiffs, plus interest.

32. Due to Defendant's poor bookkeeping, Defendant would receive payments from Plaintiffs, and Defendant would fail to credit the payments to Plaintiffs' account, making the running total of monies that Plaintiffs paid to Defendant incorrect and inaccurate.

33. Defendant overstated the amounts that Plaintiffs owed to Defendant, because Defendant failed to maintains its books and records accurately to reflect the Cement sold and delivered by Defendant to Plaintiffs, and the monies that Plaintiffs paid to Defendant.

34. While Plaintiffs made payments to Defendant for the Cement sold and delivered by Defendant to Plaintiffs, Defendant overcharged Plaintiffs for the products sold and delivered by Defendant to Plaintiffs, because Defendant erroneously failed to credit Plaintiffs' account for materials delivered by Defendant to Plaintiffs.

35. Because Plaintiffs had no other source or supplier of cement other than Defendant, Plaintiffs had to capitulate to Defendant's demands for payments although Plaintiffs advised Defendant that it appeared that Defendant was not issuing credits to Plaintiffs' account for the purchases made by Plaintiffs.

36. Ultimately, Plaintiffs was able to obtain a new source of cement product and Plaintiffs ceased purchasing Cement from Defendant.

37. In sum and substance, Defendant received approximately more than $3,000,000 in payments from Plaintiffs between July 4, 2015 and July 4, 2021 that Defendant was not entitled to receive from Plaintiffs because of Defendant's poor recordkeeping.

38. Additionally, upon information and belief, Defendant billed Plaintiffs for Cement that was delivered by Defendant to third-parties, unrelated to Plaintiffs.

39. Upon information and belief, Defendant attempted to recover monies from Plaintiffs for Cement and products sold by Defendant to third-parties, unrelated to Plaintiffs.

40. Between approximately July 4, 2015 and the present date, Defendant demanded payments from Plaintiffs for Cement not yet delivered to Plaintiffs by Defendant.

41. Defendant demanded payments from Plaintiffs for Cement that Defendant anticipated to deliver to Plaintiffs and such payments demanded were based on what Defendant thought the total amount of materials delivered to Plaintiffs would be, but which were actually never delivered by Defendant to Plaintiffs.

42. Defendant would not post payments received from Plaintiffs for approximately one to two weeks, which made it extraordinarily difficult for Plaintiffs to reconcile the statements that Plaintiffs received from Defendant.

43. Defendant refused to provide Plaintiffs with invoices for materials purchased by Plaintiffs and delivered by Defendant.

44. Defendant refused to provide Plaintiffs with delivery receipts for materials purchased by Plaintiffs and delivered by Defendant.

45. Defendant refused to provide delivery tickets signed by an employee of Plaintiffs for materials purchased by Plaintiffs and delivered by Defendant.

46. Defendant overbilled Plaintiffs in an amount to be determined at trial, but anticipated to be no less than $3,000,000.

47. There was an oral contract made by Plaintiffs and Defendant which was renewed automatically each year on or about January 1 of each year, including but not limited to on January 1, 2015, January 1, 2016, January 1, 2017, January 1, 2018, January 1, 2019, and January 1, 2020.

48. Plaintiffs performed all of the terms of the contract with Defendant.

49. Defendant failed to perform its obligations under the contract, by overcharging Plaintiffs for Cement purchased by Plaintiffs and sold and delivered by Defendant.

50. Defendant breached its contract with Plaintiffs by overcharging Plaintiffs for Cement purchased by Plaintiffs and sold and delivered by Defendant.

51. Plaintiffs suffered damages as a result of Defendant's breach of contract.

52. By reason of the foregoing, Plaintiffs have been damaged by Defendant, and Plaintiffs demand judgment against Defendant in an amount to be determined at trial but anticipated to be no less than $3,000,000, plus interest, costs, disbursements and attorney's fees.

## AS AND FOR A SECOND CLAIM FOR RELIEF FOR UNJUST ENRICHMENT AGAINST DEFENDANT

53. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "51" of this complaint, with the same force and effect as if more fully set forth at length herein.

54. Defendant benefitted at Plaintiffs' expense by Plaintiffs paying monies to Defendant for materials that were not delivered by Defendant to Plaintiffs.

55. Equity and good conscience require restitution from Defendant Plaintiffs.

56. By reason of the foregoing, Plaintiffs have been damaged by Defendant, and Plaintiffs demand judgment against Defendant in an amount to be determined at trial but anticipated to be no less than $3,000,000, plus interest, costs, disbursements and attorney's fees.

**WHEREFORE,** Plaintiffs demand judgment against Defendant as follows:

A. On the first claim for breach of contract, in an amount to be determined at trial but anticipated to be no less than $3,000,000, plus interest, costs, disbursements and attorney's fees;

B. On the second claim for relief for unjust enrichment, in an amount to be determined at trial but anticipated to be no less than $3,000,000, plus interest, costs, disbursements and attorney's fees;

C. granting such other relief as may be proper.

Dated: July 6, 2021
Great Neck, New York

_____
Gary Rosen, Esq. (GR-8007)
ROSEN LAW LLC
Attorneys for Plaintiffs
STILLWELL READY MIX LLC
216 Lakeville Road
Great Neck, New York 11020
516-437-3400